```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

PATRICE A. CUPP,

                            Plaintiff,     **No. 6:15-cv-06142(MAT)**
                                                **DECISION AND ORDER**
            -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                            Defendant.
_____

## I. Introduction

Patrice Cupp ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). The parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's decision is reversed, and the matter of remanded for further administrative proceedings.

## II. Procedural Status

On September 15, 2011, Plaintiff protectively applied for DIB and SSI, alleging disability commencing July 11, 2006, with a date last insured of December 31, 2009. T.29-43, 75.[1] Plaintiff alleged

---

[1] Numerals preceded by "T." refer to pages in the certified administrative transcript filed by the Commissioner in this matter.

disability due to back problems, vertigo, heart problems, panic attacks and hearing loss. After her claims were denied, Plaintiff requested a hearing, which was held via videoconference before administrative law judge Stanley K. Chin ("the ALJ") on August 20, 2013. T.44-73. Plaintiff appeared with her attorney; she and her husband both testified. The ALJ also heard testimony from impartial vocational expert James R. Newton. The ALJ issued a partially favorable decision on September 13, 2013, finding Plaintiff disabled as of March 27, 2012, the date she had experienced a stroke. T.80-102. The ALJ found that Plaintiff was not under a disability as defined by the Act from July 11, 2006, to March 27, 2012. The Appeals Council declined Plaintiff's request for review on January 15, 2015, rendering the ALJ's decision the final decision of the Commissioner. T.1-4. Plaintiff timely commenced this action. Conceding that the ALJ erred, the Commissioner offered to stipulate to remand the matter for further administrative proceedings but Plaintiff declined. Plaintiff filed a motion for judgment on the pleadings, seeking reversal and remand solely for the calculation and payment of benefits. The Commissioner cross-moved for judgment on the pleadings, requesting that the matter be remanded for further proceedings.

For the reasons discussed below, the Court declines to grant Plaintiff's request for reversal and payment of benefits. While the Court agrees that the Commissioner's decision should be reversed, the Court finds that remand for additional proceedings is the

appropriate remedy, given the ALJ's failure to consider and weigh multiple medical opinions.

**III. Discussion**

    **A.   Failure to Weigh the Medical Opinions of Record and Apply the Treating Source Rule**

        **1. Legal Principles**

The Commissioner's regulations provide that "[r]egardless of its source, [the ALJ] will evaluate every medical opinion [he] receive[s]." 20 C.F.R. §§ 404.1527(d), 416.927(d). The failure to do so is an error warranting remand. See, e.g., Harvey v. Astrue, No. 09-CV-00020 TJM, 2010 WL 4806985, at *4 (N.D.N.Y. Sept. 7, 2010) ("[T]he ALJ failed to evaluate, or even mention, Dr. Greenky's August 2007 opinion. . . . Indeed, the ALJ's discussion of Dr. Greenky/s lengthy treatment history with Plaintiff consisted entirely of mentioning a few treatment notes in 2001. The ALJ's complete failure to evaluate Dr. Greenky's opinions amounts to error worthy of remand.") (footnote and internal citation to record omitted), rep. and rec. adopted, No. 09-CV-0020, 2010 WL 4791588 (N.D.N.Y. Nov. 18, 2010). Moreover, the "treating physician rule" generally requires deference to the medical opinion of a claimant's treating physician or other acceptable medical source. E.g., Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (citation omitted). Specifically, the ALJ may not discount a treating physician's opinion unless it "lack[s] support or [is] internally inconsistent." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). Where the ALJ does not give a treating physician's

opinion on the nature and severity of a claimant's disability "controlling" weight, he must "comprehensively set forth his reasons for the weight assigned to [the] treating physician's opinion." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)) (internal quotation marks omitted). The regulations specify that the Commissioner "'will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." Id. (quoting 20 C.F.R. § 404.1527(d)(2); alterations in original; other citations omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakely v. Commissioner of Social Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). Because the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," Rogers v. Commissioner of Social Sec., 486 F.3d 234, 243 (6th Cir. 2007), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" Blakely, 581 F.3d at 407 (quoting Rogers, 486 F.3d at 243; emphasis in Blakely).

### 2. Overview of Plaintiff's Claim

Plaintiff contends that there were "*eight* treating source opinions from *four* different sources" regarding her functioning prior to her stroke on March 27, 2012, the on which the ALJ found she became disabled. See Pl's Mem. at 17-18 (emphases in original). Plaintiff cites opinions dated June 13, 2011; November 29, 2011; April 24, 2012; and June 26, 2012 from primary care physician Dr. Renee Wheeler; an October 27, 2012 opinion from Dr. Donovan Holder, Plaintiff's pain management specialist since August 3, 2012; a May 17, 2013 opinion from therapist Kay Loree, LMSW, CASAC, whom Plaintiff began seeing on October 25, 2012; and a June 19, 2013 opinion from Dr. Clifford J. Ameduri, who had seen Plaintiff on one occasion the previous month. The Commissioner concedes only that the ALJ erred in failing to evaluate Dr. Wheeler's June 13, 2011 opinion. Plaintiff argues that the ALJ also failed to weigh Dr. Wheeler's November 29, 2011, and April 24, 2012 opinions, in which Dr. Wheeler noted that Plaintiff had become disabled prior to March 27, 2012.

It appears to the Court that, out of the opinions cited by Plaintiff above, the ALJ only reviewed and weighed Dr. Wheeler's June 26, 2012 opinion (cited as Ex. 23F in the ALJ's decision) and LMSW-CASAC Loree's opinion (cited as Ex. 35F in the ALJ's decision). The ALJ gave LMSW-CASAC Loree's opinion "great" weight. With regard to Dr. Wheeler's June 26, 2012 opinion, the ALJ accorded parts of it "some" weight (i.e., the limitations on

lifting, carrying, standing, and walking) and parts of it "less" than "some" weight (i.e., the "postural limitations in general").

### 3. The Opinions Not Discussed by the ALJ

#### a. Dr. Wheeler

On June 13, 2011, Plaintiff visited Dr. Wheeler with complaints of severe vertigo, and feeling as though the room were spinning. See T.417-18. She felt "off-balance" and experienced ataxia (the loss of full control of body movements) daily. Vertigo flares caused her to be bedridden at times. Plaintiff reported daily back pain for years, insomnia, and hearing deficits. Dr. Wheeler observed that Plaintiff had been disabled by vertigo since 2006. On examination, Dr. Wheeler noted tenderness to palpation in the lumbar and thoracic spine with palpable muscle rigidity at L1-L5. In a disability form completed on or about that date, Dr. Wheeler opined that Plaintiff suffered from vertigo, hearing loss, and back pain. T.494. As a result, she could not sit or stand for more than 10 minutes at a time, could not lift, and had to change positions. Dr. Wheeler stated that Plaintiff was 100 percent disabled, and could not work due to her physical impairments. The ALJ clearly erred in failing to evaluate and weigh this medical source statement by Dr. Wheeler regarding the limitations caused by Plaintiff's severe impairments of vertigo, hearing loss and back pain.

On November 29, 2011, Dr. Wheeler observed that Plaintiff had been 100 percent disabled since her last job in 2006 due to chronic

dizziness. Similarly, on April 24, 2012, Dr. Wheeler noted that Plaintiff continued to have chronic vertigo episodes and back pain, which had disabled her prior to the stroke on March 27, 2012. T.560. It is well-settled that "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." Green-Younger v. Barnhart, 335 F.3d 99, (2d Cir. 2003) (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)). Dr. Wheeler's opinion that Plaintiff is "100 percent disabled" is not entitled to any particular deference because the Commissioner makes the ultimate determination on the issue of disability. See, e.g., Taylor v. Barnhart, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(e)(1); Snell, 177 F.3d at 133). However, "[r]eserving the ultimate issue of disability to the Commissioner . . . does not exempt administrative decision makers from their obligation . . . to explain why a treating physician's opinions are not being credited." Snell, 177 F.3d at 134. To the extent these treatment notes from Dr. Wheeler additionally specify particular limitations on Plaintiff's ability to perform work-related functions caused by her vertigo, back pain, hearing loss, and other severe impairments for the period from July 11, 2006, to March 27, 2012, the ALJ must evaluate them against the regulatory factors.

**b.   Dr. Holder**

On October 12, 2012, Plaintiff's pain management specialist, Dr. Holder, issued an opinion regarding Plaintiff's residual functional capacity. T.594-96. According to Dr. Holder, Plaintiff could stand or walk for one hour at a time and one hour total in an eight-hour day; could sit for six hours continuously and in an eight-hour day; could only lift less than ten pounds; needed to alternate between sitting and standing; would miss about four days of work per month due to the limitations caused by her impairments; and would constantly be off-task, even on simple tasks. Dr. Holder opined that she had been under these limitations since July 11, 2006.

There is no dispute that Dr. Holder qualifies as a treating source for purposes of applying the treating physician rule of deference. The fact that Dr. Holder rendered his functional capacity report in 2012, after the end of the period relevant to the instant appeal does not undermine its significance as a treating source opinion. See Pierce v. Astrue, 946 F. Supp. 2d 296, 311 (W.D.N.Y. 2013) ("The fact that [the treating physician] rendered his functional capacity report in 2009, after the end of the relevant period for [the claimant]'s disability application, does not undermine its significance as a treating source opinion.") (citing, inter alia, Dousewicz v. Harris, 646 F.2d 771, 774-75 (2d Cir. 1981) ("[A] diagnosis of a claimant's condition may properly be made even several years after the actual onset of the

-8-

impairment.") (quotation omitted; alteration in original)). As the Second Circuit has observed, "the fact that a condition is more disabling today than it was yesterday does not mean that the condition was not disabling yesterday." Dousewicz, 646 F.2d at 775.

### c.   Dr. Ameduri

Dr. Ameduri issued an opinion dated June 19, 2013, regarding Plaintiff's functional limitations. T.683-85. He had seen Plaintiff only once previously, on May 14, 2013. According to Dr. Ameduri, Plaintiff could not stand continuously, and could only stand cumulatively for one hour in an eight-hour workday; could walk for 15 minutes continuously, and 30 minutes in an eight-hour day; could sit continuously for one hour, and for two hours in an eight-hour day. T.684. She was limited to lifting less than 10 pounds, needed to elevate her legs with prolonged sitting, would miss more than four days per month due to her impairments; and would off-task constantly, even for simple tasks. T.684-85. Although noting that Plaintiff had experienced a stroke in March 2012, Dr. Ameduri nevertheless opined that these limitations had been continuing and consistent since July 11, 2016. T.685.

### B.   Residual Functional Capacity Not Supported by Substantial Evidence

Given that the ALJ failed to weigh and consider numerous treating source opinions, as discussed above, it appears that there is only one medical opinion supporting his residual functional capacity ("RFC") assessment for the time period at issue on this appeal, namely, the report of consultative physician Karl Eurenius,

M.D. The ALJ found, however, that Dr. Eurenius failed to provide sufficiently specific limitations caused by Plaintiff's impairments. See T.90 (according "less weight" to Dr. Eurenius's opinion because "it fails to state specific limitations in the claimant's ability to lift and carry or to be exposed to environmental factors, consistent with her noted diagnoses[,]" namely, chronic low back pain with neuropathic symptoms) (citing Ex. 13F). Courts uniformly have held that "[b]ecause an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) (citing, inter alia, Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities.")). This error also warrants remand.

**C.  Remedy**

The Second Circuit has instructed that remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician [']s opinion," or when the "opinions . . . do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). The Court declines to

reverse solely for calculation and payment of benefits. "[A]lthough there is substantial evidence of Plaintiff's disability—including considerable evidence the ALJ did not explicitly consider—there is also conflicting evidence from which it is conceivable the Commissioner might find that Plaintiff is not disabled" during the period of time at issue on this appeal. Kane v. Astrue, 942 F. Supp. 2d 301, 315 (E.D.N.Y. 2013) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citation omitted)). On remand, the Commissioner must address the weight to be given to the treating source opinions from Dr. Wheeler, Dr. Holder, and Dr. Ameduri and, if those opinions are not given controlling weight, to provide "good reasons" for doing so in compliance with the Commissioner's regulations and SSR 06-03p, 2006 WL 2329939, at *2, *3 (S.S.A. Aug. 9, 2006). The Commissioner also must re-contact consultative physician Dr. Eurenius to obtain clarification regarding the limitations he imposed on Plaintiff in his report. After completing the record and weighing all of the medical opinions of record, the ALJ will need to re-formulate an RFC assessment for the date of onset through July 11, 2006.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt #9) is denied, and the Commissioner's Motion for Remand (Dkt #13) is granted. The Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. Specifically,

the Commissioner must address the weight to be given to the treating source opinions from Dr. Wheeler, Dr. Holder, and Dr. Ameduri and, if those opinions are not given controlling weight, to provide "good reasons" for not doing so, in compliance with the Commissioner's regulations and SSR 06-03p. The Commissioner also must re-contact consultative physician Dr. Eurenius to obtain clarification regarding the limitations he imposed on Plaintiff in his report. After completing the record and weighing all of the medical opinions of record, the ALJ will need to re-formulate an RFC assessment for the date of onset through July 11, 2006.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         March 23, 2016.